Next case on this morning's docket is S.I. Securities v. James Powless. We have Mr. Glenn Tetzlaff for the appellant, and we have Mr. Rex Burke for the applicant. You may proceed. Thank you very much. My name is Glenn Tetzlaff, and I am representing the appellant, S.I. Securities, in regards to a tax deed that was issued in the Williamson County Court. What I'd like to begin with in regards to this is just a basic statement that talks about tax deeds are incontestable. Pursuant to 35 ILCS 222-45, after a deed is issued, it's been the legislature's intent that that deed be incontestable only by, or contestable, I guess that's the word, reversal, by certain events that take place. I mean, this is a case, when you look at the facts, that defies the logic of that statement about being incontestable. I guess I have to say that in regards to this case, when you look at the history, it may go back to a baseball philosopher that said, it ain't over till it's over. This case has been going on for over a decade. Now let me just very rapidly go through the scenario of this case. What the statute actually says is it's incontestable except under certain circumstances, including 2-1401, which is what was filed in this case, right? Yes, I agree. I agree. But the gist, the intent of the legislature is that after these deeds are given or there's an order for a deed and a deed is issued, they're looking for the merchantability of these titles so that they have a deed that is in effect. And yes, there are exceptions. And when I look back over the history, it begins in 97 when a certificate is purchased in regards to nonpayment of taxes. It goes to the year 2000 when the order is issued for, or directing the issuance of the tax deed in the year 2000. Almost three years go by after that order is entered, and then a petition is filed pursuant to 21401 stating that the order should be rescinded. Now, it can occur, and I agree with Your Honor, that there are certain circumstances and that 21401 is one. Now, we're beyond the two-year period at this particular point. So what the burden is on the movement is that they have to show fraud to reopen the case. Now, when I talk about when it's over and the length of time that this went on, the record is clear. I went through five petitions to rescind this tax deed, to vacate the tax deed, and each one of them, the court in Williamson County agreed. And it wasn't until the sixth amended petition was filed, and that sixth amended petition was filed, if I'm not mistaken, in the year 2006. At that time, the court denied my motion to dismiss that petition because the court felt at that time that the allegations in the petition were sufficient to at least sustain going forward with an evidentiary hearing in regards to the issues of fraud. Now, what we know in regards to fraud that is required under 21401, it's not merely passive fraud. The burden on the movement is to show that, in fact, that the fraud, as alleged, must be one of an active fraud, an intentional fraud on behalf of my client to fraudulently conceal the tax deed. In other words, what we're talking about here is not fraudulent procurement of the tax deed. You're talking about fraudulent concealment of the potential for an action under 2-1401 that tolls the two-year time period. That's what you're talking about. And it's really a combination of the two, because the idea here is to reverse this case and get to the 2245 statute. Before you can get to that point, you're going to have to show fraud under 21401 that there was an affirmative action that… To get past the timeliness of the filing of the petition. Right. Because they have to show that's the only thing that stays the statute of limitations under 21401. So that was the burden to get to that threshold and then meet the burdens of 2245 in regards to trying to overturn that particular order. And 2245 would require some recorded ownership or recorded interest. Is that right? That's correct, Your Honor. And was there any such recorded ownership or interest? None whatsoever. That's really the second point of my argument, but to cut through it is this, is that the individual who's making the complaint to get the tax deed or the order for the tax deed overturned has got to show some ownership interest, some recorded interest in the property. Now, you're not disputing he had some contract to acquire the property? At this point, I am disputing it. And here's the difference from the designation. When the Sixth Amendment petition was filed or motioned to vacate, there were allegations that the interest or the recorded interest by the movement was such that he had a contract for deed. Now, this case is so convoluted that it's not the movement. The movement was Philip Castellano. His allegations in his petition was is that the registered owners, which, by the way, never participated in this proceeding, okay, in regards to our hearing, the registered owners of this property are Marion and Roberta Castellano. Philip Castellano is the fellow that was represented here and moved to vacate that tax order. He alleged in his petition that his interest was this. A contract for deed was entered into with Marion and Roberta Castellano on behalf of American Homes Incorporated, which is a defunct company at this time, and I own 100 percent of the stock of that company. That was the allegations. Now, when it came to the hearing, the record was clear. Absolutely zero evidence was presented to the court to show any recorded interest in the property by either American Homes or Philip Castellano or any other individual. To this day, there are no documents recorded in Williamson County that shows ownership in any other party or interest than Marion and Roberta Castellano. And yet, again, the second part of my argument is, where is the standing in regards to this? What Mr. Castellano showed, and that's Philip Castellano, is that he had a home that a portion of it sat on this particular lot in issue. Therefore, he was an occupant of the property, and he had not been served with notice as to the proceedings. I thought there were two homes. The original lot, whatever the size of the lot, was added on, and then it was divided in half. On one of the lots, Mr. Castellano, Philip Castellano, was an occupant, and a portion of that home overlapped onto the old boundary line of this lot. The other, which is really the lot that's in question, was a slab to begin with, and by the time it went to court, there was a framed, not a completed, but just a frame of a home. And that's what exists there today. And that issue over what this property is, because that hasn't really been stated, is a framed shell of a house that still sits on this particular piece of property. But in regards to vacating under 214.01, I also would assert to the court that part of the obligation on the movement is to make an effort to remedy the situation. And if there's anything that occurred in the transcript at that particular hearing originally is the fact that testimony from one of SI Security's employees had specifically stated prior to the deed they had made mention to Mr. Philip Castellano that in fact there were some proceedings that were going on because he knew that, and it wasn't related to the case, but he was from Marion and he knew Mr. Castellano and said, I saw Mr. Castellano and I said, hey, your place, there's a tax proceeding going on in the lot that's next door. That was not disputed in the hearing, Mr. Castellano didn't say. The individual then said, I saw him later on, a couple weeks later, and it was at a gas station, as I recall, and I said, did you get that taken care of? And I don't remember the response, but said, yes, or whatever the response was. But the point is, that was at a time prior to the issuance of the tax deed. Three years later, almost three years later, they filed a motion to vacate the issuance of the order of the tax deed. Your point there is how could there be fraudulent concealment of the issuance of the tax deed if representatives of SI Security had told him about it before the deed was issued? Yes, and that was the testimony at the hearing, Your Honor. I have nothing in the file that shows that, in fact, as an occupant, Mr. Castellano was served, because I believe that the record is clear, he wasn't served at that particular time. And I guess that's my point, is this only goes to the issue of the timeliness of the filing of the 2-1401. That's correct, Judge, and I believe that it's the burden on the individual to not sit back and wait. He's got a burden to follow through to assert his rights rather than sit on his heels and wait for almost three years and then come to the courthouse and ask for relief. That's one of the requisites under 2-1401. So if you're going to come in after two years, at least show that was your first discovery of that particular point, number one. But then even if we get back, and, Judge, he just ruled against my client feeling that there had been sufficient fraud. I assert to the court that there is no proof, no proof of any intentional, willful conduct by my client other than the fact that there was proof that he said he was an occupant of the property and he hadn't gotten served. But it's clear in rulings that, in fact, that's not sufficient. L.A. v. Johnson has held under these specific circumstances that the court held fraudulent concealment must be an affirmative action. Mere silence or failure to disclose a judgment are representative of the court that the property is vacant when it's not. And that's what occurred here because the people at S.I. Securities thought the property was vacant. And, in fact, technically, Mr. Philip Castellano was an occupant of the house that sat on a corner of the property. But that's not enough. They have to show some affirmative action, something to conceal what had been going on. So none of that, when you look at the transcript, was shown to the court. And, in fact, the court ruled against my client feeling that it had been. And I'm asking you to reverse regarding those aspects. Now, the final point, and I ask, and when I talk about the time on this case, ask you to look at those points in regards to the standing of the individual and the length of this case that's been going on. Because I really feel, even though it was – the allegations were made in the petition that he had standing because he gave us a scenario of how he had ownership or supposedly recorded ownership of the property. When the hearing came out, in fact, he showed nothing. And that's, in regards to the standing, why I'd like to ask the court to take a look at it. Because, in the final argument, it's the 2280 argument that deals with the orders of the court that set aside tax deal. Now, there's no question about it in this case that, in fact, the order that was entered by Judge Mekas set aside the tax deal. There is a statute that specifically deals with that in the rights of the parties. Now, I filed a motion to reconsider after Judge Mekas made that rule. And in my motion to reconsider, not only did I lay out my arguments that I thought it hadn't been flawed and there was no standing. But more specifically, I pointed out to the court that under 35 ILCS 2280, the court is required to enter an order that returns certain fees to the individuals. I mean, this is crystal clear. This is their mandatory. The court shall enter this order and shall order certain things to be done by the movement who is successful if you overturn the deed. And specifically what it does is it returns certain monies to the individual who's been paying this out. For example, my client, during all of these years, from the time that the order was issued in the year 2000 through 2009, paid all the taxes on the property. Well, the purpose of the whole tax deed process is to try to get the property in the hands of somebody who will pay the taxes. And so you should end up either with the property or get your money back with interest. That's why people invest in these. Absolutely. Your client didn't get either one. Okay. Pursuant to the order of the court, my client walked out of the courthouse with no ownership of the property and no money or no return on any money that he had invested. And the intent of the statute of 2280 is the return of that. Otherwise, what happens, or what happened in this case, Mr. Castellano receives the property and he got a free ticket for 10 years. Remember, this began back in 1997 when my client paid the tax bill. The taxes would have been paid in 98-99. 2000, he received the property. But along with that came the tax bill through the nine years and all the costs that were related to this. Jaudicus did not enter any order. His comments were he felt that the county should be a party to that aspect of it. I vigorously disagree because the county is not the one. The county is paid. It's a mere proof in regards to the amount of money that my client paid, and an appropriate order should have been entered. And 2280 is very specific because what 2280 says is that order should be entered, and if the movement does not pay the full amount, in other words, it doesn't give me my money back, specifically within 90 days, his motion is dismissed. So there's a time restraint in regards to 2280. It says I get my money in 90 days. So the record is clear in regards to my motion to reconsider, and I believe the amount of monies that should have been ordered, but there was a refusal by the circuit court to comply with 2280. Just a minute here. Okay. 2280 does say that under those circumstances it will be treated as a sale in error, right? And it says the order shall direct the county collector to refund to the tax deed grantee, or his successors are assigned certain things. So it was the county. The statute says the county has to pay these things. No. 2280, I'm looking at your brief. The order shall direct the county collector to refund to the tax deed grantee the following amounts. One, all taxes and special assessments. Page 7 of your brief, I'm sorry. I see that, Your Honor. And I'm trying to go to the bottom part of that, because it states any order of the court finding that an order directing the county collector to issue a tax deed shall be vacated, shall direct the party who successfully contested the entry. Okay. That's the clause. Okay. And I don't want to speculate. I don't recall right offhand why the county would refund a part of the money, and it may be under other circumstances. Okay. But B is the paragraph that is applicable to this particular case. Okay. You're under B, not A. Yes, Your Honor. I follow you now. And so that directs, it's the individual who vacates that must pay that, and it must be within 90 days of the date of the finding. And specifically, if that requirement is not made, the petition will be dismissed. So for all of what I've said, and in a total area or in a complete analysis, number one, there was no fraud shown. Number two, there's no standing by this individual to make the argument since we went to hearing and there was absolutely no proof shown other than part of the house I was in was on the property. That's all that was shown. And finally, if the court disagrees with me in regards to those points, there must be an order for the payment of money back to my client as soon as it's 22 days. Thank you. Thank you, Mr. Teske. You'll have the opportunity to rebut. And, Mr. Burke, your argument? A couple of points just to get a picture of the property in question. We have a subdivision that has a lot of forward, which is the property that the tax bill, the tax fee was obtained for. That flat was vacated. And as shown by the record of vacation that was submitted to the court, the documents that were of record, the tax authorities of the county should have by January of the year previous to the tax sale that went to SI Securities, have given that property a different number. They failed to do that. And one of the counts that was originally brought by one of the plaintiffs to begin with was an action against the county. And the court felt that that was not right because the complaining parties or parties should do what they could to get the property back to the procedure that's being followed now. And only if that failed could a person in my client's position then proceed against the county. Let me ask a question. Yes, sir. Was the county collecting taxes on the same property for the two individuals under different numbers? There was not a record of that. There was only record that we had two different flats. The one flat was vacated. The second flat was then approved by the county authorities, signed off, accorded, approved in time for there to be a number and in time for there to be a new tax situation. That is a record. And that the second flat of lots one and two happened to not be exactly the same property as lot four. In other words, the lot four in question overlaps a little bit, quite a bit, onto lot one enough that the testimony was that the line ran about between the ends of the living room of the house that was sitting on lot one and then also covered the structure on lot two. Now, getting back to the fraud that the court found, the S.I. securities clearly stated in their act today, and it's written off as a mistake, but clearly stated that the property, lot four, was vacant. Well, there were several arguments made that lot four didn't even exist. It was vacant. We're dealing with lots one and two, and what we're talking about is all of lot two and a good chunk, if not half, of lot one is what we're talking about, but it's described as an old, mystical, ancient lot four that doesn't exist anymore. But my client is sitting on lot one, the new lot one, and building a house on lot two. So he's got a house on lot one and building a house on lot two. He testified that he was buying it under contract. Granted, it was not a record. There's no dispute about that. But his testimony was that he's sitting in his house one day, knock on the door, and the date, which happens to be two years and two weeks after the deed was issued, people show up at his house and say, hey, we own the house next door. By the way, we own the bottom of your living room of this house, and we're locking up that house. It's not yours anymore. And so he did say that in the past this fellow had come by from SI Security and had told him there was a problem, and the notice, there's no doubt, was not given in terms of a past notice that shows what case number there is, shows the old ID number, shows where you go to get things redeemed. It wasn't that type of notice. This fellow is hypothetically laboring under the assumption that he's got lot one and two to deal with, not lot four to deal with. Let me ask another question. This is making my head hurt, and I'm sure it did Egas' too, okay? But when the tax deed was obtained, the tax deed was for lot four. Lot four, yes. Did lot four still exist when the tax deed was obtained? That argument did not exist. In terms of, you look at the record, look at what is on file. There is no lot four. It's been vacated. Well, had it been vacated before the tax deed was obtained? Yes. It was vacated before the January of the bill that came out, yes. It was clearly vacated before then. So if the court, lower court as well as this court, upholds the argument of SI securities, they in effect get one lot of a new flat plus part of another lot cutting through a living room. And then the property may not even fit in the code bill anymore because it wouldn't have enough boundaries. And was part of your petition to vacate the tax deed that that order was void because it was on a lot that didn't exist? That argument was brought up several times, I think, in a motion for summary judgment. But basically we have a, there was not any jurisdiction because it was jurisdiction over something that was mystical. There wasn't any just like something that didn't exist. So it would be just like somebody got a tax deed to a piece of property that didn't describe anything. And that was part of the argument in motion for summary judgment. But when we went down to the trial, the court found that the lie that occurred, and the court described it as a lie, that this person put in evidence to the court that there was no tax deed, there's nobody on this place. It was vacant when there actually was. My client was sitting there on half of it and building a house on the other half, or not quite half of it, and building a house on another lot. And that if the court had known that, the court no doubt would have required that a specific statutory notice be given to the occupant of this place. And the court came to the conclusion that this was an active action on the part of the SI superiors, in that they had information from their agent that the agent testified he did tell the superiors that there was somebody on this property. But when it went through for the tax deed procedure, it ended up with an affidavit saying the place was vacant. And then further, even though they had a tax deed to a part of the structure, and then they had a tax deed to perhaps a slab, perhaps a building of what ended up being a building, and whether they were just sitting there with it while the person finished the building, I don't know. But at any rate, there was a building, actually a shell already there on lot two. And my client gets the notice in person that, hey, you know, two years and two weeks ago, you've been divested of that property that you've got a house on and that property you're living in. Let me ask you a couple quick questions here. Assuming you're successful in appeal, you're not disputing that you would have to pay the taxes cost? Absolutely not. Okay. No, no. Okay. And then why is your petition timely? Because my client alleged that he did not know that the tax deed was actually about to be issued on lot four. Granted, he's not an attorney, but he thought he was dealing with a different subdivision than what the tax deed was issued for. He was issued a deed for lot four in Kent's second, and my client owned lots one and two in Kent's third. And I think he made some testimony that he made some inquiry into that, and what inquiry he did as far as the courthouse goes, I can't say for sure. That's why he should be granted the relief that he was innocent enough and that the actions of the SI securities is reprehensible enough that they did not show to the court what they actually knew, that they had an opportunity to tell the court, they had an opportunity to give actual notice in the proper fashion to my client, who their agent, who had reported back to his bosses, knew was actually there. And it is something that is commonly done when some person is found as an occupant. They're given the proper notice, and things go on. They either get the taxes paid or they lose the property, but they're given the proper notice. The court found that this was sufficient fraud and that the fraud was of a nature that caused the delay in my client's action in not doing anything until he did, and therefore the court ruled to set aside the tax deed, and we would ask the court to affirm that. And if the court does affirm it, my client would be responsible for paying back the taxes that were paid on this property. Thank you, Mr. Burke, Mr. Temple. He gets rebuttal. Excuse me? He gets rebuttal. Yes, yes. I'm sorry for walking away. That's okay. No, you may proceed with rebuttal. Just very shortly. Sorry. That's okay. I'd like to mention a couple things in regards to what Mr. Burke said. First of all, the lack of response to the standing argument. I didn't hear anything that said he may have standing for a rebuttal in regards to the fact that there was some recorded interest, as Your Honor pointed out with 2245, that said that there has to be a party of interest. That's that main point, is that there was absolutely nothing introduced into evidence that in fact there was any standing or that they were an interested party or they had an interest. Not only that, not even introduced, and as I told you how far-fetched it was, that there was a contract for deed for a corporation that was defunct. Not even that contract for deed was introduced into evidence. So there was absolutely zero and thus no response. And in reference to a question regarding what was the situation at the time the tax deed was issued, I would point out to the court, this court has ruled years ago in regards to the issuance and whether or not the court has jurisdiction over property is not at the time of the deed. Wilder v. Finnegan deals with the fact that jurisdiction is acquired because it's property of the county and it's the time the county clerk applies for the tax sale. That was back in 1997. Okay, and so at that time, at the time the county clerk applied for the tax sale, was it lot 4? Was that before the plat was vacated? The only way I can't answer, Your Honor, and I will say why. The reason is, is that was not pled. That was not argued. There was not an argument as to the original jurisdiction, and therefore I did not research that. I pointed out that this argument was made for the first time on appeal. The Sixth Amendment petition to vacate does not include the jurisdictional, any type of jurisdictional question, nor was there any proof introduced at our hearing whereby the county clerk or the assessor or the tax assessor was brought forward to say to the court it was in the rules or it wasn't or anything. None of that was heard at that particular time. The main thrust was, was there fraudulent activity at that particular time? And finally, to deal with that aspect of it, and specifically because the complaint here is, hey, we've got a guy living on this place and he wasn't served with notice. Is that sufficient? Pursuant to 214.01, Elliot v. Jensen, the court in that case held the fraudulent concealment must be an affirmative action. If you blow it, if you've got somebody there and you lay the rumor, hey, we've got somebody there, and especially after two years, it must be an affirmative action, mere silence, a failure to disclose a judgment, or representing to the court that the property is vacant when it does not meet this requisite standard of fraudulent, it does not meet this requisite standard. In other words, the court, and Elliot reviewed this, because that was the argument. Hey, we've got a guy living here, he didn't get served. Does that arise to fraudulent concealment? To say don't tell him anything about it for two years. That's correct. Well, of course, one of the employees, and the testimony is clear, that did in fact tell the occupant, Phillip Castellano, that this action was going on. And that, I would argue, is a double-edged sword. I mean, he comes in and he wants to argue the fact that, well, we heard testimony that, in fact, later on, you were telling one of my clients that, in fact, there's something going on here, okay? And then later on, he doesn't want to say, which is a requirement under 214.01, that you've got to pursue your action that I didn't know anything about. It wasn't really a tax proceeding that that guy was talking to me about. That's what the evidence was at that particular time. And there really is more. This is a very convoluted, it gives me a headache when I look at it, how much this lot got split up and where the property lines was, and just a portion of this particular house happened to be on that section. I mean, when they thought that it was vacated, and the testimony indicated that they had somebody from my client's company come and inspect the property four or five months before they went in for the deed, that's when this building took place, this shell in the house, in that interim area. So one person goes out and looks at it and represents to another party in the company, hey, that's a vacant lot. But when you go to court just three months later and we didn't inspect it up until that time and there's actually a shell that's standing out at that time, that's part of the rub. All in all, I ask you to reverse the order of the court. Thank you. Thank you, Mr. Burt, Mr. Tetzlaff.